# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 07 2019 ★

LONG ISLAND OFFICE

Nº 17-CV-6187 (JFB)

SHIROIDE SIMS,

Petitioner,

VERSUS

DALE ARTUS, SUPERINTENDENT,
ATTICA CORRECTIONAL FACILITY,

Respondent.

**MEMORANDUM AND ORDER**
August 7, 2019

JOSEPH F. BIANCO, Circuit Judge (sitting by designation):

Shiroide Sims ("petitioner"), proceeding *pro se*, petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in New York state court. On January 23, 2014, petitioner pled guilty to a reduced charge of manslaughter in the first degree, in violation of N.Y. Penal Law § 125.20, a class "B" felony. Petitioner was thereafter sentenced to a determinate term of eighteen years' imprisonment with five years of post-release supervision.

In the instant habeas petition, petitioner challenges his conviction on the grounds that his conviction was illegal and unauthorized by law. For the reasons discussed below, petitioner's request for a writ of habeas corpus is denied.

## I. BACKGROUND

### A. Facts

The following facts are adduced from the instant petition and underlying record.

On November 20, 2010, petitioner was in North Amityville, New York with Ronald "Lee-Lee" Woolridge. (P. 7-8.)[1] The two had an argument over the sale of narcotics before petitioner shot and killed Woolridge with a semi-automatic 40 caliber handgun. (P. 8-9.)

---

[1] Citations to "P." refer to the minutes from the plea proceedings held on January 23, 2014. (ECF No. 10-5.)

1

B. Procedural History

1. State Court Proceedings

On November 30, 2010, petitioner was indicted for one count of murder in the second degree, in violation of N.Y. Penal Law § 125.25, a class "A" felony, two counts of criminal possession of a weapon in the second degree, in violation of N.Y. Penal Law § 265.03, class "C" felonies, and one count of criminal possession of a weapon in the third degree, in violation of N.Y. Penal Law §265.02, a class "D" felony, in connection with the shooting and killing of Woolridge that occurred on November 20, 2010. (ECF No. 10-2 at 2-3.)

a. Pretrial *Wade* Hearing

On June 6, 2011, petitioner's attorney filed an omnibus motion in County Court, Suffolk County, requesting a *Wade* hearing to determine the propriety of the identification and identification procedures implemented by law enforcement. (ECF No. 10-2 at 16-19.) During that hearing, held on July 11, 2012, Detective Philip Frendo ("Det. Frendo"), of the Suffolk County Police Department, testified that a witness provided him with a description of the person who allegedly committed the murder and then, using this information, Det. Frendo had another detective prepare a photo array from a computerized identification system. (*Id.* at 39.) This array had six photos, including petitioner's, of similar looking individuals. (*Id.*) Det. Frendo showed the array to three different witnesses. (*Id.*) Prior to showing each witness the photos, Det. Frendo read a paragraph at the bottom of the array, explaining that the perpetrator of the crime may or may not be in the array and that an individual's appearance may change as a result of hair and beard changes. (*Id.*) Each witness went on to identify petitioner and circled petitioner's photograph before initialing and dating the form. (*Id.*) Over defense counsel's objection, the court held that the original identifying witness's identity was irrelevant and barred defense counsel from asking Det. Frendo about it. (ECF No. 10-4 at 38-40.) The trial court then held that the identification procedures in this case were not unduly suggestive. (ECF No. 10-2 at 39.)

b. Plea and Sentencing

On January 23, 2014, petitioner pled guilty in County Court, Suffolk County, to the reduced charge of manslaughter in the first degree, a class "B" felony. (ECF No. 10-5.) Petitioner was sentenced on April 16, 2014. (ECF No. 10-6.) During the sentencing proceeding, the prosecutor recommended that the maximum period of incarceration be imposed, a determinate term of imprisonment of twenty-five years plus five years of post-release supervision. (*Id.* at 4.) The court then sentenced petitioner to a determinate term of eighteen years' imprisonment with five years of post-release supervision, a fine of five thousand dollars, and a mandatory surcharge of three hundred and seventy-five dollars. (*Id.* at 9.)

c. Appeal

On July 1, 2016, petitioner appealed to the Appellate Division, Second Department, arguing that: (1) the *Wade* court erred in overruling defense counsel's objection to the prosecution's failure to call as witnesses the identifying witness and the detective who arranged the photospread; (2) the *Wade* court erred in denying defense counsel's request that the identity of the original identifying witness be revealed; (3) petitioner's waiver of right to appeal was ineffective and, therefore, the sentence was harsh and excessive; and (4) the non-negotiated fee of five thousand dollars should be vacated in the interest of justice. (ECF No. 10-3 at 2.)

On January 11, 2017, the Second Department modified petitioner's judgment and affirmed his conviction. *People v. Sims*,

45 N.Y.S.3d 491 (2d Dep't 2017). The court rejected petitioner's argument that the prosecution was required to present other witnesses for testimony. *Id.* at 821. At a *Wade* hearing, the prosecution has the initial burden of production "to establish the reasonableness of the police conduct and the lack of any undue suggestiveness." *Id.* at 820 (quoting *People v. Chipp*, 75 N.Y.2d 327, 335 (1990)). The court found that the prosecution met this initial burden "through the testimony of the police officer who conducted the photo array. . . and through admission into evidence of the photo array." *Id.* Because the prosecution met its initial burden, "it was not necessary for them to present testimony from one of the identifying witnesses and the police officer who compiled the photo array [.]" *Id.* Finally, in response to the contention that the five thousand dollar fine was not negotiated for, nor mentioned as part of the plea agreement, the court found that the issue was unpreserved for appellate review. *Id.* Nonetheless, the court vacated the fine in the interest of justice, as the fine had not been included in the guilty plea negotiation. *Id.*

Petitioner applied for leave to appeal to the New York Court of Appeals. On April 20, 2017, the Court of Appeals denied his application. (ECF No. 10-3 at 55.)

2. The Instant Petition

On October 17, 2017, petitioner filed a *pro se* petition before this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on the ground that his conviction was illegal and unauthorized by law.[2] (Pet., ECF No. 1.) Specifically, petitioner argued that the trial judge had no authority to preside over the case as he failed to file his oath of office and that there were *Batson*, *Molineux*, *Bruton*, and *Rosario* violations during the trial. (*Id.* at 22-23, 25.) On January 18, 2018, respondent filed its opposition, arguing that petitioner's claims are both unexhausted and without merit. (Opp., ECF No. 10-1.)

The Court has fully considered the parties' submissions, as well as the underlying record.

II. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

---

[2] Petitioner requested that the Court vacate his conviction and order a new trial. (Pet. at 6.)

3

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413.

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are review *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

III. DISCUSSION

Petitioner argues that he is entitled to habeas relief on the ground that his conviction was illegal and unauthorized as a matter of law. Respondent contends that petitioner's claims are unexhausted and otherwise meritless. For the following reasons, the Court concludes that petitioner is not entitled to habeas relief and denies the instant petition.

A. Procedural Requirements

1. Exhaustion

a. Legal Standard

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to the highest state court with jurisdiction over them, *see Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (alteration in original) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must fairly present his claims in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both

the factual and legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191-92 (collecting cases). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* at 192.

b. Application

In his habeas petition, petitioner argues that his conviction was unlawful because the trial judge allegedly failed to take his oath of office, thereby rendering him without authority to preside over his case. (Pet. at 25.) Further, petitioner argues that his constitutional rights were violated due to alleged *Batson*, *Molineux*, *Bruton*, and *Rosario* violations. (*Id.* at 22-23.)

Petitioner failed, however, to raise any of these issues in his appeal to the New York Court of Appeals.[3] Given that the state courts have thus not been given the "'opportunity to pass upon and correct' [the] alleged violations of its prisoners' federal rights," these claims are unexhausted and this court is without authority to review this habeas petition.

*Duncan*, 513 U.S. at 365 (alteration in original) (quoting *Picard*, 404 U.S. at 275).

B. Merits

Although petitioner's claims are unexhausted, the Court, in an abundance of caution, has nonetheless reviewed the claims, finding them meritless.[4]

As a threshold matter, a petitioner who pleads guilty forfeits the right to argue issues collateral to the guilty plea. *Haring v. Prosise*, 462 U.S. 306, 321 (1983). This is because a plea of guilty "conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue." *United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006). Thus, once a defendant has admitted guilt, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Indeed, once there has been an admission of guilt, "[t]he only proper focus of a federal *habeas* inquiry . . . is the voluntary and intelligent character of the guilty plea." *Amparo v. Henderson*, No. CV 86-4310, 1989 WL 126831, *2 (E.D.N.Y. Oct.18, 1989) (quoting *Isaraphanich v. United States*, 632 F. Supp. 1531, 1533 (S.D.N.Y.1986)). There is no evidence, from the court's review of the transcript of the plea proceeding, and petitioner makes no argument, that his plea was not voluntary or

---

[3] As mentioned earlier, in his appeal, petitioner argued that (1) the *Wade* court erred when it overruled the defense's objection to the prosecution's failure to call as witnesses the detective who arranged the photospread and the identifying witness; (2) the *Wade* court erred when it denied defense counsel's request that the identity of the original identifying witness be revealed; (3) petitioner's waiver of his right to appeal was ineffective and, thus, the imposed sentence was harsh and excessive and should be modified in the interest of justice; and (4) the non-negotiated fine of five thousand dollars should be vacated in the interest of justice. (ECF No. 10-3 at 2.)

[4] Courts in this district have correctly held that they have the discretion to dismiss unexhausted habeas claims on the merits if they are "patently frivolous" and/or fail to raise a federal question. *See Wheeler v. Phillips*, No. 05-CV-4399 (JFB), 2006 WL 2357973, at *5 (E.D.N.Y. Aug. 15, 2006) (collecting cases).

intelligent. In any event, as discussed below, petitioner's claims fail on the merits.

1. Failure to Take an Oath Claim

   a. Legal Standard

When reviewing habeas petitions, federal courts must apply a "strong presumption of constitutional regularity in state judicial proceedings." *Darr v. Burford*, 339 U.S. 200, 218 (1950); *see also People v. Velasquez*, 1 N.Y.3d 44 (2003) (presumption of regularity existed when a defendant claimed he was absent during sidebar conferences); *People v. Harrison*, 85 N.Y.2d 794 (1995) (presumption of regularity applied when the stenographic record was missing portions of the jury voir dire). This presumption of regularity, however, can be overcome by "substantial evidence to the contrary." *People v. Cruz*, 14 N.Y.3d 814, 816-18 (2010) (holding the presumption was overcome with evidence that "there was a significant, unexplained irregularity in the proceedings"). Moreover, "[u]nder this 'presumption of regularity' the law further presumes that no official or person acting under an oath of office will do anything contrary to his duty or omit anything which his official duty requires to be done." *People v. Dominique*, 90 N.Y.2d 880, 881 (1997).

A "'merely technical' defect of statutory authority" does not necessarily strip a judge of authority; instead, the Supreme Court has found that, in such cases, "a judge's actions [are found] to be valid *de facto*." *Nguyen v. United States*, 539 U.S. 69, 77 (2003); *see also McDowell v. United States*, 159 U.S. 596 (1895) (declining to invalidate a judgment for alleged irregularities in the way a circuit judge appointed a temporary district judge to another district). Further, under the *de facto* officer doctrine, it "is well settled that where there is an office to be filled and one acting under color of authority fills the office and discharges its duties, his actions are those of an officer de facto and binding upon the public." *McDowell*, 159 U.S. at 601-02; *see also Ryder v. United States*, 515 U.S. 177, 180 (1995) (finding that the *de facto* officer doctrine "confers validity upon acts performed under the color of official title even though it is later discovered that the legality of the actor's appointment or election to office is deficient").

   b. Application

Petitioner claims that the judge who presided over petitioner's *Wade* hearing, guilty plea, and sentencing, failed to take his oath of office and, thus, any judicial proceeding before him is rendered invalid. (Pet. at 25-28.) Respondent first argues that petitioner has provided no evidence that the judge failed to take his oath and then contends that even such a failure would not necessarily strip him of authority. (Opp. at 7-9.)

The Court agrees with respondent. Petitioner has not presented any evidence suggesting that the judge failed to take his oath of office. Under the presumption of regularity, and in the absence of any contrary evidence, it is assumed that the judge properly carried out his duties. *See Dominique*, 90 N.Y.2d at 991; *see also Mena v. Heath*, No. 11-CV-03681 (ALC) (FM), 2017 WL 167915 at *1 (S.D.N.Y. Jan. 13, 2017) (holding that, even if the testifying officer was not duly sworn, it is assumed, in the absence of contrary evidence, that he testified truthfully). In any case, as noted above, the "*de facto* officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder*, 515 U.S. at 180. Therefore, failure to properly take his oath of office would not strip the judge in petitioner's case of his authority and is not grounds for a new trial or habeas relief. *See Maunsell v. WCAX TV*, 477 F. App'x 845, 845 (2d Cir. 2012) (rejecting defendant's claim, using the *de facto* officer doctrine, that he is unable to obtain relief in Vermont courts

because the oaths of some identified public officials may have been defective).

## 2. *Batson* Claim

### a. Legal Standard

"[W]hen reviewing a *Batson* challenge in the context of a habeas petition, a trial court's conclusion that a peremptory challenge was not exercised in a discriminatory manner is entitled to a presumption of correctness, except, *inter alia,* to the extent that the trial court did not resolve the factual issues involved in the challenge or if the finding is not fairly supported by the record." *Galarza v. Keane*, 252 F.3d 630, 635 (2d Cir. 2001). In *Batson*, the Supreme Court set forth a three-part test for a trial court evaluating whether peremptory challenges were exercised in a discriminatory manner: (1) "a trial court must decide whether the party challenging the strike has made a *prima facie* showing that the circumstances give rise to an inference that a member of the *venire* was struck because of his or her race"; (2) "[i]f the party making the *Batson* challenge establishes a *prima facie* case, the trial court must require the nonmoving party to proffer a race-neutral explanation for striking the potential juror"; and (3) "if the non-moving party proffers a race-neutral explanation, the trial court must determine whether the moving party has carried his or her burden of proving that the strike was motivated by purposeful discrimination." *Id.* at 635-36 (citing *Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986)).

### b. Application

Petitioner claims his "constitutional federal rights were impinged on by the State Court's decisions . . . when his *Batson* was never made and so when it was–the court accepted the People's pretextual reasons for their exercise of peremptory challenges." (Pet. at 22.) Respondent contends that given the absence of a jury trial and corresponding jury selection process, there could have been no *Batson* violation. (Opp. at 15.)

Petitioner had a *Wade* hearing before a judge and subsequently pled guilty before a judge. (ECF No. 10-5.) There was no jury trial and, thus, no jury selection process during which a *Batson* objection could have been made to a suspect peremptory challenge. *See Richardson v. Greene*, 497 F.3d 212, 214 (2d Cir. 2007) ("A *Batson* objection may be lodged when a party perceives a pattern of discrimination in the use of peremptory strikes during the voir dire . . . ."). Therefore, given that there could be no *Batson* violation in this case, petitioner is not entitled to habeas relief on this claim.

## 3. *Molineux* Claim

### a. Legal Standard

Under New York law, "[a] trial court may admit into evidence uncharged crimes when the evidence is relevant to a pertinent issue in the case other than a defendant's criminal propensity to commit the crime charged." *People v. Till*, 87 N.Y.2d 835, 836 (1995). However, "[e]ven then, such evidence is admissible only upon a trial court finding that its probative value for the jury outweighs the risk of undue prejudice to the defendant." *Id.* (citations omitted). In *People v. Molineux*, the New York Court of Appeals stated that

> Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial.

168 N.Y. 264, 294 (1901) (citation

omitted). However, this list is "illustrative and not exhaustive," *People v. Rojas*, 97 N.Y.2d 32, 37 (2001) (citations omitted), and evidence of uncharged crimes that is necessary to provide "background material" or to "complete the narrative of the episode" may also be admissible. *Till*, 87 N.Y.2d at 837 (citations omitted).

b. Application

Petitioner argues that his Sixth and Fourteenth Amendment rights were violated "when his *Molinex* [sic] was never entered to the court (or was never allowed by the court)." (Pet. at 22.) Respondent contends that, given that there was no trial, there could not have been a *Molineux* violation. (Opp. at 15.) The Court agrees. A *Molineux* ruling occurs when the prosecution wants to admit evidence of defendant's uncharged crimes before the court. *See Molineux*, 168 N.Y. at 264; *see also Ramirez v. Attorney Gen. of State of N.Y.*, 280 F.3d 87 (2d Cir. 2001). When, as here, a defendant pleads guilty instead of proceeding to trial, there is no opportunity for the prosecution to make such a request. Therefore, the *Molineux* claim is meritless and does not warrant habeas relief.

4. *Bruton* Claim

a. Legal Standard

"The Confrontation Clause of the Sixth Amendment, . . . which applies to the states through the Fourteenth Amendment, guarantees the defendant in a criminal prosecution the right to confront the witnesses against him." *Henry v. Speckard*, 22 F.3d 1209, 1214 (2d Cir. 1994) (internal citation omitted). Accordingly, the Confrontation Clause prohibits the prosecution from introducing "testimonial" statements by a non-testifying declarant unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *See Crawford v. Washington*, 541 U.S. 36, 53-54 (2004); *Davis v. Washington*, 547 U.S. 813, 821 (2006) ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."). The Supreme Court in *Bruton v. United States*, 391 U.S. 123 (1968), held that a defendant's Confrontation Clause rights are violated when a non-testifying codefendant's statement incriminating the defendant is admitted into evidence. A limiting instruction to the jury is insufficient to combat the violation, *id.* at 136; however, it can be avoided if the statement is "redacted to eliminate not only the defendant's name, but any reference to his or her existence," *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), and does not have any "obvious indications of deletion," "such as a blank space [or] the word 'deleted,'" *Gray v. Maryland*, 523 U.S. 185, 192 (1998).

The Supreme Court has further made clear that there is "an absolute bar to statements that are testimonial, absent a prior opportunity to cross-examine," *Crawford*, 541 U.S. at 61, and "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68. *Crawford*, however, declined "to spell out a comprehensive definition of 'testimonial,'" stating that, "[w]hatever else [the term] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.*

b. Application

Petitioner asserts there was a *Bruton* violation when he was improperly denied the right to question a "cooperating non-party" whose "double-hearsay statements" were entered at the *Wade* hearing through Det. Frendo. (Pet. at 23.) Respondent contends that, without a trial, there was no opportunity for a *Bruton* issue to arise. (Opp. at 15.)

Moreover, respondent argues that, although there was a *Wade* hearing during which petitioner was denied the opportunity to question the detective who administered the photo-array about his basis for including petitioner's photo, the inquiry could only have bearing on probable cause and was unrelated to the suggestiveness of the identification procedures. (*Id.*)

*Bruton* applies only in joint trials where a non-testifying codefendant's statements implicating the defendant are admitted into evidence. *See* 391 U.S. at 123. In the present case, petitioner is the only defendant and, thus, there are no codefendants whose statements could be used to incriminate him. Although *Bruton* is inapplicable here, the Court, in an abundance of caution, has examined petitioner's claim under the Confrontation Clause.

During the *Wade* hearing, evaluating the propriety of the process for petitioner's identification, Det. Frendo testified about the photo array and his interactions with the three identifying witnesses. (ECF No. 10-4.) During this testimony, Det. Frendo referred to information he received from an individual who identified petitioner as a potential suspect. (*Id.* at 28-29.) This information, in turn, led Suffolk County detectives to put petitioner's photograph in the photo array. (*Id.*) Det. Frendo was also cross-examined by defense counsel. (*Id.* at 27-40.) Defense counsel questioned Det. Frendo as to this individual's identity, but the prosecution objected, claiming it was irrelevant, and the court sustained the objection. (*Id.* at 38-40.)

The denial of the opportunity to cross-examine or identify this individual did not violate petitioner's rights under the Confrontation Clause because the hearing was focused on whether the array was unduly suggestive and was not meant to establish defendant's guilt (*i.e.*, "testimonial"). "The purpose of a *Wade* hearing is to determine [before] the trial whether pretrial identification procedures have been so improperly suggestive as to taint an in-court identification." *Twitty v. Smith*, 614 F.2d 325, 333 (2d Cir. 1979) (citing *United States v. Wade*, 388 U.S. 218 (1967)). Therefore, at such a hearing, the "defendant's guilt is not being assessed" as at trial. *People v. DiTommaso*, 2 N.Y.S.3d 494, 505 (1st Dep't 2015); *see also People v. Hoehne*, 610 N.Y.S.2d 579, 580 (1994) (holding that, during a *Wade* hearing, the court "properly prevented defense counsel from cross-examining the People's witnesses regarding the eyewitnesses' descriptions of the robber, finding that the issue before it was whether the array was unduly suggestive, and not whether the photographs matched the description of the perpetrator-an issue more properly left for trial") (citations omitted)). Moreover, challenges to identification testimony are only applicable to a witness who actually participated in an identification procedure, and "not to one who has simply provided a description not used at trial." *Silent v. Perlmann*, No. 07-CV-4524 (JFB), 2008 WL 5113418, at *11 (E.D.N.Y. Nov. 25, 2008).

Finally, even assuming *arguendo* that petitioner's Confrontation Clause rights were violated during the *Wade* hearing, such a violation is subject to harmless error review. *See, e.g., United States v. McClain*, 377 F.3d 219, 222 (2d Cir. 2004). Here, any error was harmless given the fact that three individuals identified petitioner as the murderer in the photo array, and there is no basis to conclude that questioning the witnesses involved in the initial identification of petitioner as a likely suspect (leading to his photo's placement in the array) would have had any impact at the *Wade* hearing. Moreover, as noted *supra*,

petitioner pled guilty to the charge prior to trial. (P. 8-9.)

Accordingly, this Court concludes this claim is baseless and cannot be grounds for habeas relief.

5. *Rosario* Claim

a. Legal Standard

For the purposes of federal habeas corpus review, a habeas petition can only be granted to remedy some violation of federal law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citations omitted) ("[F]ederal habeas corpus does not lie for errors of state law.... In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")

Under New York state law, *Rosario* material refers to the statements of testifying witnesses that must be disclosed to the defense prior to opening statements. *People v. Rosario*, 9 N.Y.2d 286 (1961). Because the obligation to turn over *Rosario* material arises under state law, to the extent that a claim is based on a *Rosario* violation and does not otherwise rise to the level of a federal constitutional violation, it must fail. *See Estelle*, 502 U.S. at 67.

Federal courts have examined *Rosario* claims in habeas petitions under its federal counterpart, the *Jencks* rule. *See generally Bogan v. Bradt*, No. 11-CV-1550 (MKB) (LB), 2017 WL 2913465 (E.D.N.Y. July 6, 2017); *Herrera v. Artus*, No. 06-CV-1715, 2007 WL 29392 (E.D.N.Y. Jan. 4, 2007); *Morrison v. McClellan*, 903 F. Supp. 428, 429 (E.D.N.Y. 1995); *Boyd v. Hawk*, No. 94-CV-7121, 1996 WL 406680 (S.D.N.Y. May 31, 1996). The *Jencks* rule, codified at 18 U.S.C. § 3500 (2012), requires the government in federal criminal trials to produce all statements and reports related to the subject matter of the government witness' testimonies. *Jencks v. United States*, 353 U.S. 657, 672 (1957). However, the *Jencks* rule is an evidentiary rule and its violation does not create a constitutional concern. *See United States v. Augenblick*, 393 U.S. 348, 356 (1969) (holding that the failure to produce *Jencks* materials did not create a case that was a "worthy candidate for consideration at the constitutional level."); *see also Bogan*, 2017 WL 2913465, at *5 ("The "Court [may not] grant habeas relief on an alleged violation of the *Jencks* rule, given that the *Jencks* rule is only an evidentiary rule and not a constitutional one.") (citations omitted). Therefore, even if a claim is brought under the federal *Jencks* rule, habeas relief may not be granted. *See Augenblick*, 393 U.S. 348.

b. Application

Petitioner finally argues his Sixth and Fourteenth Amendment rights were violated due to the fact that there was "no 'Rosario' and violation thereof." (Pet. at 23.) Respondent argues that such a claim is without merit because it arises under state law and, therefore, cannot be the basis for habeas relief. (Opp. at 16.)

Petitioner's claim of *Rosario* violations arises only under state law and, even under the federal equivalent, the *Jencks* rule, does not otherwise rise to the level of a federal constitutional violation (given that rule's evidentiary nature); therefore, habeas relief may not be granted on this claim. *See Estelle*, 502 U.S. at 67; *see also Landy v. Costello*, 141 F.3d 1151 (2d Cir. Mar. 9, 1998) ("To the extent that this claim is based on a *Rosario* violation, it must fail, because a habeas petition can only be granted to remedy some violation of *federal law*; the obligation to turn over *Rosario* material arises under *state* law."); *Bogan*, 2017 WL 2913465, at *5 ("The Court may not grant habeas relief on the basis

of an alleged violation of New York state law as articulated in *Rosario*." (citation omitted)).

IV. CONCLUSION

For the foregoing reasons, this Court finds that petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. Accordingly, this petition for a writ of habeas corpus is denied in its entirety.

Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United* States, 369 U.S. 438, 444-45 (1962). The Clerk of the Court shall close this case.

SO ORDERED.

JOSEPH F. BIANCO
United States Circuit Judge (sitting by designation)

Dated: August 7, 2019
Central Islip, New York

\* \* \*

Petitioner is proceeding *pro se*. Respondent is represented by Glenn Green, Assistant District Attorney, Suffolk County District Attorney's Office, 200 Center Drive, Riverhead, New York 11901.